CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com; aito@hibklaw.com

Attorneys for Debtor
and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>PANCAKES OF HAWAII, INC.,<br><br>      Debtor and<br>      Debtor-in-possession. | Case No. 23-00386<br><br>(Chapter 11)<br>(Subchapter V Small Business)<br><br>Judge:  Hon. Robert J. Faris |

### SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION; EXHIBITS 1-5

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of **PANCAKES OF HAWAII, INC.** (the "Debtor"), and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN (IF YOU RECEIVE A BALLOT), YOU MAY OBJECT TO**

86964

**CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST FILE AND SERVE ANY OBJECTIONS TO THE PLAN, NO LATER THAN _____, 2023.** Please refer to the accompanying notice of the Confirmation Hearing for specific requirements regarding the form and nature of objections to confirmation of the Plan.

**IF YOU ARE ENTITLED TO VOTE, YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____, 2023, AT 5:00 p.m. HAWAII STANDARD TIME (the "Balloting Deadline"). THE BALLOT MAY BE RETURNED VIA EMAIL TO aito@hibklaw.com OR MAILED TO THE FOLLOWING ADDRESS: 700 Bishop Street, Suite 1107, Honolulu, Hawaii 96813.** Ballots received after the Balloting Deadline, and ballots returned directly to the Debtor, the Bankruptcy Court, or any entity other than the Ballot Tabulator, will not be counted in connection with confirmation of the Plan.

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____, 2023, AT _____ IN THE COURTROOM OF THE HONORABLE ROBERT J. FARIS, U.S. BANKRUPTCY JUDGE FOR THE DISTRICT OF HAWAII, LOCATED AT**

> 1132 Bishop Street, Suite 250
> Honolulu, Hawaii 96813

**THE CONFIRMATION HEARING WILL BE CONDUCTED REMOTELY VIA ZOOM.**

Please refer to the accompanying notice of the Confirmation Hearing for Zoom connection information.

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

DATED:     Honolulu, Hawaii, August 22, 2023.


/s/ Chuck C. Choi
CHUCK C. CHOI
ALLISON A. ITO
Attorneys for Debtor and
Debtor-in-Possession

86964

# TABLE OF CONTENTS

**ARTICLE 1    HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR**    2

    **1.1    Nature of the Debtor's Business.**........................................................ 2

    **1.2    History of Business Operations of the Debtor** ............................... 2

    **1.3    Filing of the Debtor's Chapter 11 Case.**......................................... 2

    **1.4.    Legal Structure and Ownership.** ................................................... 2

    **1.5.    Debtor's Assets** ............................................................................. 2

    **1.6.    Debtor's Liabilities.** ...................................................................... 3

    **1.7.    Current and Historical Financial Conditions.**............................. 3

    **1.8.    Events Leading to the Filing of the Bankruptcy Case.** .................. 4

    **1.9.    Significant Events During the Bankruptcy Case.** .......................... 4

**ARTICLE 2    THE PLAN** ............................................................................. 4

    **2.1.    Unclassified Claims.** ...................................................................... 5

    **2.2    Classes of Claims and Equity Interests.** ........................................ 7

    **2.3.    Estimated Number and Amount of Claims Objections.**................. 9

    **2.4.    Treatment of Executory Contracts and Unexpired Leases.**.......... 10

    **2.5.    Means for Implementation of the Plan.**......................................... 10

    **2.6.    Payments.** ....................................................................................... 11

    **2.7.    Post-Confirmation Management.** .................................................. 11

    **2.8.    Tax Consequences of the Plan.**...................................................... 11

    A.    Consequences to the Debtor ............................................................... 12

      1.    Cancellation of Debt.................................................................... 12

      2.    Reduction of the Debtors' Indebtedness ..................................... 13

    B.    Consequences to Holders of Certain Claims...................................... 13

    **2.9.    Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan** ......................................................................... 14

**ARTICLE 3    FEASIBILITY OF PLAN** ................................................... 14

    **3.1.    Ability to Initially Fund Plan.** ....................................................... 14

**3.2. Ability to Make Future Plan Payments And Operate Without Further** ................................................................................................ 14

**ARTICLE 4    LIQUIDATION ANALYSIS** ................................................ 15

**ARTICLE 5    DISCHARGE** ....................................................................... 15

**5.1. Discharge.** ........................................................................................ 15

**ARTICLE 6    GENERAL PROVISIONS** ................................................... 16

**6.1. Title to Assets.** ................................................................................ 16

**6.2. Binding Effect.** ................................................................................ 16

**6.3. Severability.** .................................................................................... 16

**6.4. Retention of Jurisdiction by the Bankruptcy Court.** .................... 16

**6.5. Captions.** ......................................................................................... 17

**6.6. Modification of Plan.** ...................................................................... 17

**6.7. Final Decree.** ................................................................................... 17

**ARTICLE 7    ATTACHMENTS** ................................................................. 17

**ARTICLE 8    RESERVED** .......................................................................... 18

**ARTICLE 9    DEFINITIONS** ..................................................................... 18

**9.1.** 18

**9.2. Administrative Claimant** ............................................................... 18

**9.3. Administrative Expense** ................................................................. 18

**9.4. Administrative Tax Claim** .............................................................. 18

**9.5. Allowed Claim** ................................................................................ 19

**9.6. Allowed Priority Tax Claim:** ......................................................... 19

**9.7. Allowed Secured Claim** .................................................................. 19

**9.8. Allowed Unsecured Claim** ............................................................. 19

**9.9. Bankruptcy Code or Code** ............................................................. 19

**9.10. Bankruptcy Court** ........................................................................ 19

**9.11. Bankruptcy Rules:** ....................................................................... 19

**9.12. Cash** .............................................................................................. 19

**9.13. Chapter 11 Case** .......................................................................... 19

U.S. Bankruptcy Court - Hawaii   #23-00386   Dkt # 64   Filed   08/22/23   Page 4 of 39

**9.14. Claim** ................................................................................................................ 19

**9.15. Class** ................................................................................................................. 20

**9.16. Confirmation** ..................................................................................................... 20

**9.17. Confirmation Date** ............................................................................................. 20

**9.18. Confirmation Hearing** ....................................................................................... 20

**9.19. Confirmation Order** ........................................................................................... 20

**9.21. Creditor** ............................................................................................................. 20

**9.22. Debtor** and **Debtor-in-Possession** ................................................................. 20

**9.23. Disputed Claim** .................................................................................................. 20

**9.24. Distributions** ...................................................................................................... 20

**9.25. Effective Date** .................................................................................................... 20

**9.26. Equity Interest** ................................................................................................... 21

**9.27. Executory Contracts** .......................................................................................... 21

**9.28. Final Order** ......................................................................................................... 21

**9.29. IRC** ..................................................................................................................... 21

**9.31. Petition Date** ...................................................................................................... 21

**9.32. Plan** .................................................................................................................... 21

**9.33. Priority Tax Claim** ............................................................................................. 21

**9.34. Reorganized Debtor** ........................................................................................... 21

**9.35. Schedules** ........................................................................................................... 21

**9.36. Secured Creditor** ................................................................................................ 21

**9.38. Trustee** ............................................................................................................... 21

**9.39. Unsecured Creditor** ............................................................................................ 21

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

Funding for the Plan will come from the Debtor's income from business operations.

| UNCLASSIFIED CLAIMS | |
|---|---|
| **Priority Taxes**<br>Department of Tax, State of Hawaii<br>Proof of Claim = $1,092.48 | Paid in full on later of the Effective Date of the Plan or the date the priority tax claims are allowed by the Court. |
| **Administrative Expense Claims** | Administrative expense claims are paid in full on the Effective Date of the Plan.  Estimated to be $84,000.  Administrative Expenses will be paid on the later of the Effective Date of the Plan or the date they are Allowed by the Court. |
| **PLAN CLASSES AND TREATMENT OF CLAIMS**<br>**Bar Date = August 2, 2023** | |
| **Pre-Petition Employee Claims**<br> (Estimated amount: $1,580-priority unsecured; $300-General unsecured) | Honored in the ordinary course of business. |
| **General Unsecured Creditors**<br>**(Excluding Employee Claims)**<br>(Estimated amount of claims: $345,919 to $520,919) | Pro Rata share of $250,000.<br><br>A preliminary pro rata distribution of $82,027 will be made on the Effective Date to holders of Allowed General Unsecured Claims.<br><br>The remaining $167,973 will be distributed on the date on which an order allowing Claim of Landlord becomes a Final Order, or as soon thereafter as is practicable. |
| **Equity** | Retained. |

U.S. Bankruptcy Court - Hawaii   #23-00386   Dkt # 64   Filed  08/22/23   Page 6 of 39

# ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1.    Nature of the Debtor's Business.

The Debtor is a franchisee of the Original Pancake House, which first opened in Oregon in 1953.  The Original Pancake House franchise is well known on Oahu.  Prior to the pandemic, the Debtor's customer base included visitors to Hawaii from Japan.

### 1.2.    History of Business Operations of the Debtor

The Debtor was formed in 1989 when it acquired the Kapiolani Pancake House location (1221 Kapiolani Boulevard, Suite 103, Honolulu, Hawaii), which opened in 1979.  Also in 1989, the Debtor opened a second Pancake House location at 1414 Dillingham Boulevard.  However, in February, 2023, the Debtor ceased operations at the Kapiolani location due to a dispute with the landlord.  The Debtor currently employs approximately seventeen (17) full time, one (1) part time, and two (2) salaried employees.  Rent for its Dillingham lease totals about $14,000.00 per month.

### 1.3    Filing of the Debtor's Chapter 11 Case.

On May 24, 2023, the Debtor filed a voluntary petition for relief under Subchapter V of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Hawaii (the "Court").

### 1.4.    Legal Structure and Ownership.

The Debtor is a Hawaii corporation. Young Acopan is the owner and sole officer and director of the Debtor.

### 1.5.    Debtor's Assets

As of the Petition Date, the Debtor's principal assets consisted of approximately $13,000  in food inventory, and cash at American Savings Bank totaling approximately $442,317.

The Debtor's FF&E has a liquidation value of approximately $6,500-$10,000.

### 1.6. **Debtor's Liabilities.**

The Debtor has no secured creditors.

As of the Petition Date, the Debtor owed approximately $1,880 in accrued employee benefits, approximately $1,580 of which are afforded priority unsecured status because they were earned in the 180 days immediately prior to the Petition Date.

The Debtor scheduled approximately $518,500 in non-employee general unsecured claims (which includes the disputed claim of the landlord for the Kapiolani location).

The last day for creditors to file pre-petition unsecured claims against the Debtor was fixed by the Court as August 2, 2023. Approximately $8,700 in unsecured claims have been filed against the Debtor as of August 2, 2023 (excluding the approximately $345,000 claim filed by the landlord for the Kapiolani location).

The Debtor reserves the right to object to claims it believes to be inappropriate. The final amounts of unsecured claims that will be allowed will be determined by the Court.

### 1.7. **Current and Historical Financial Conditions.**

The Debtor's annual gross sales for the period 2018 – 2021 are summarized below:

| Year | Annual Gross Sales |
|------|--------------------|
| 2018 | $2,657,210 |
| 2019 | $2,591,618 |
| 2020 | $1,068,789 |
| 2021 | $1,941,115 |
| 2022 | $2,705,537 |

Prior to 2020, Debtor ran a fairly profitable operation. The Kapiolani location previously generated the bulk of the Debtor's sales, but due to the COVID-19 pandemic, sales dropped dramatically at Kapiolani.

The Debtor's most recent (unaudited) financial statements is attached as **Exhibit 2**.

3

A summary of the Debtor's monthly operating reports filed since the commencement of the Debtor's bankruptcy case is attached as **Exhibit 3**.

As of July 31, 2023, the Debtor had approximately $576,961.89 in cash (which includes $4,500.00 in the DIP account for the Subchapter V Trustee). The Debtor is current on its administrative obligations.

### 1.8. <u>Events Leading to the Filing of the Bankruptcy Case.</u>

The bankruptcy was filed, in part, because the Debtor did not wish to litigate the alleged damages claimed by FPA Kapiolani Associates, LLC (the "Landlord") in the Honolulu District Court for the First Circuit, State of Hawaii (the "State Lawsuit"). The Landlord's lawsuit has been removed to the Bankruptcy Court. Trial is currently scheduled for May 14, 2024.

### 1.9. <u>Significant Events During the Bankruptcy Case.</u>

Since the Petition Date, the Debtor has obtained orders authorizing, among other things, the payment of prepetition wages and commissions. The Debtor also obtained court approval to employ Choi & Ito as general bankruptcy counsel.

### ARTICLE 2
### <u>THE PLAN</u>

The Plan must describe how Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least

two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1. **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the

Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's current estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated | Proposed Treatment |
|------|-----------|--------------------|
| Administrative Tax Claim | $0.00 | Payment outside the Plan in the ordinary course. |
| Professional fees | Choi & Ito: $40,000.00<br><br>Keith Kiuchi, ALC: $35,000.00 | Paid on the later date of the Effective Date of the Plan or the date they are Allowed by the Court. |
| Trustee | $9,000.00 | Paid on the later date of the Effective Date of the Plan or the date they are Allowed by the Court. |
| TOTAL | $84,000.00 | |

B.     Priority tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Taxing Authority and Type of Tax | Estimated Amount | Period | Treatment |
|---|---|---|---|
| DoTax – General Excise Tax | $1,092.48 | 5/1/23-5/23/23 | Paid in full on the later of the Effective Date of the Plan or the date the priority tax claims are Allowed by the Court. |

### 2.2  Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured Claims and their proposed treatment under the Plan:

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |

B.  Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a

7

class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 1 | Employee benefits earned before the Petition Date<br><br>Priority unsecured claim pursuant to Section 504(a)(4)<br>Total amt of claims = $1,580.00<br><br>General unsecured claims = $300.00<br>Total amt of claims = $1,880.00 | Unimpaired | Except to the extent that the holder of an Allowed Class 1 Claim agrees to a different treatment, the holder of an Allowed Class 1 Claim who is **not** employed by the Debtor as of the Effective Date shall receive on account of such Allowed Claim, Cash in the amount equal to the holder's Allowed Claim, 30 days after the later of (a) the Effective Date; and (b) the date on which an order allowing such Claim becomes a Final Order, and, in each case, or as soon thereafter as is practicable.<br><br>Except to the extent that the holder of an Allowed Class 1 Claim agrees to a different treatment, the holder of an Allowed Class 1 Claim who **is employed by the Debtor** as of the Effective Date shall have such Allowed Claim reinstated and assumed by the Reorganized Debtor as of the Effective Date. |

C.  Classes of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The following chart identifies the Plan's proposed treatment of Class 2 which contains general unsecured Claims against the Debtor:

8

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 2 | General Unsecured Class<br><br>(Estimated amount of claims: $345,919 to $520,919) | Impaired | Pro Rata share of $250,000.<br>A preliminary pro rata distribution of $82,027 will be made on the Effective Date to holders of Allowed General Unsecured Claims.<br>The remaining $167,973 will be distributed on the date on which an order allowing Claim of Landlord becomes a Final Order, or as soon thereafter as is practicable. |

D. Class[es] of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 3 | Equity Interest holders | Unimpaired | Retain interest in Debtor. |

**2.3. <u>Estimated Number and Amount of Claims Objections.</u>**

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy

U.S. Bankruptcy Court - Hawaii   #23-00386   Dkt # 64   Filed 08/22/23   Page 14 of 39

Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

| Claim No. | Nature of Claim Objected To | Amount of Claims |
|:---:|:---|:---:|
| 3 | Rent, lease termination, administrative, attorney and late fees, interest, and repair costs | $344,649.00 |

### 2.4. <u>Treatment of Executory Contracts and Unexpired Leases.</u>

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (*i.e.*, accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

The Executory Contracts shown on **Exhibit 4** shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. **Exhibit 4** also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

### 2.5. <u>Means for Implementation of the Plan.</u>

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests

U.S. Bankruptcy Court - Hawaii   #23-00386   Dkt # 64   Filed  08/22/23   Page 15 of 39

except as provided in the Plan, to the Debtor.  The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

The Board of Directors of the Debtor (consisting of Steven Mulgrew) immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date.  Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

The Debtor will continue its business operations and pay Plan obligations from its net disposable income.

### 2.6.    __Payments.__

If the Plan is confirmed under section1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to section1194(a). Once the Trustee's service is terminated under section 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

### 2.7.    __Post-Confirmation Management.__

The Post-Confirmation Officers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Annual Compensation |
|------|----------|---------------------|
| Young Acopan | Sole Officer / Director | $52,000.00 |

### 2.8.    __Tax Consequences of the Plan.__

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following discussion summarizes certain federal income tax consequences of the implementation of the Plan to the Debtors and certain Holders of Claims.  The following summary does not address the federal income

tax consequences to (i) Holders whose Claims are entitled to reinstatement or payment in full in Cash, or are otherwise unimpaired under the Plan (*e.g.*, Holders of Administrative Expense Claims, Holders of Priority Tax Claims), or (ii) Holders whose Claims or Equity Interests are or may be extinguished without a distribution in exchange therefor.

The following summary is based on the Internal Revenue Code of 1986, as amended (the "Code"), Treasury Regulations promulgated thereunder, judicial decisions and published administrative rules and pronouncements of the Internal Revenue Service ("IRS") as in effect on the date hereof. Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the federal income tax consequences described below.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt. In addition, this summary does not address foreign, state or local tax consequences of the Plan.

ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. ALL HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

A.    CONSEQUENCES TO THE DEBTOR

1.    **Cancellation of Debt**

The tax attribute reduction rules of Internal Revenue Code section 108 may have the effect of severely reducing or eliminating the NOLs of the Debtor. Due to legal and factual uncertainties and other matters including the potential occurrence of a previous ownership change under Internal Revenue Code section 382, the extent to which NOLs will be available to shelter income from federal income tax currently is unclear. Creditors and other

U.S. Bankruptcy Court - Hawaii   #23-00386   Dkt # 64   Filed  08/22/23   Page 17 of 39

parties in interest are cautioned against assuming that such NOLs will be available to any extent for such purpose.

### 2. Reduction of the Debtors' Indebtedness

As a result of the Plan's implementation, the amount of the Debtor's aggregate outstanding indebtedness will be reduced substantially. (Any amount of potential discharged indebtedness for federal income tax purposes will be referred to herein as a "Debt Discharge Amount"). In general, the Internal Revenue Code provides that a taxpayer who realizes a discharge of indebtedness must include the Debt Discharge Amount in its gross income in the taxable year of discharge to the extent that the Debtor Discharge Amount exceeds any consideration given for such discharge. No income from the discharge of indebtedness is realized to the extent that payment of the liability being discharged would have given rise to a deduction.

If a taxpayer is in a title 11 case and the discharge of indebtedness occurs pursuant to a plan approved by the court, such discharge of indebtedness is specifically excluded from gross income.

The Internal Revenue Code requires certain tax attributes of a debtor to be reduced by the Debt Discharge Amount excluded from income. Tax attributes are reduced in the following order of priority: net operating losses and net operating loss carryovers; general business credits; minimum tax credits; capital loss carryovers; basis of property of the taxpayer; passive activity loss or credit carryovers and foreign tax credit carryovers. Tax attributes are generally reduced by one dollar for each dollar excluded from gross income, except that general tax credits, minimum tax credits and foreign tax credits are reduced by 33.3 cents for each dollar excluded from gross income. As discussed above, the tax attribute reduction rules may eliminate all or a large portion of NOLs and other tax attributes.

### B. CONSEQUENCES TO HOLDERS OF CERTAIN CLAIMS

Each holder of a Claim will recognize gain or loss measured by the difference between (i) any cash and the fair market value of any other property received by such holder and (ii) its adjusted tax basis in the Claim. This income, gain or loss will be capital gain or loss if the Claim is a capital asset in the holder's hands. Holders of Claims in the form of accounts or notes receivable acquired in the ordinary course of a trade or business for the

performance of services or for the sale of inventory will recognize ordinary income, gain or loss. In addition, if a holder of a Claim has taken an ordinary deduction for the worthlessness of the Claim under the Code in a prior taxable year, any income or gain realized will be taxed as ordinary income to the extent of the ordinary deduction claimed.

### 2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan

Debtor has provided projected financial information. Those projections are listed in **Exhibit 1**.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1. Ability to Initially Fund Plan.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. As of July 31, 2023, the Debtor had approximately $576,961.89 in cash in bank accounts. Assuming that the Effective Date is January 1, 2024, the Debtor estimates that it will have approximately $500,225.66 in cash on the Effective Date, which is sufficient to pay all claims and expenses entitled to be paid on the Effective Date.

### 3.2. Ability to Make Future Plan Payments And Operate Without Further Reorganization.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in **Exhibit 1** (referenced in § 2.9, above).

The Debtor's financial projections show that the Debtor will has sufficient cash to make all Plan payments. The final Plan payment is expected

to be paid in December, 2028.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit 5**.

## ARTICLE 5
## DISCHARGE.

**5.1. Discharge.**

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 6

# GENERAL PROVISIONS.

### 6.1. Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2. Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3. Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4. Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and/or Confirmation Order and to resolve any disputes arising from implementation of the Plan/or Confirmation Order; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and

other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. <u>Captions.</u>

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. <u>Modification of Plan.</u>

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to Section 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. <u>Final Decree.</u>

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7
## <u>ATTACHMENTS</u>

The following documents accompany the Plan:

U.S. Bankruptcy Court - Hawaii   #23-00386   Dkt # 64   Filed  08/22/23   Page 22 of 39

Financial projections for the Debtor, annexed as **Exhibit1**.

Debtor's most recent financial statements issued before bankruptcy, annexed as **Exhibit 2**.

Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as **Exhibit 3**.

Executory Contracts and Unexpired Leases, to be Assumed annexed as **Exhibit 4**.

Liquidation Analysis, annexed as **Exhibit 5**.

### ARTICLE 8
### RESERVED

### ARTICLE 9
### DEFINITIONS

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2. Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3. Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.4. Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

U.S. Bankruptcy Court - Hawaii   #23-00386   Dkt # 64   Filed  08/22/23   Page 23 of 39

**9.5.    Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.6.    Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.7.    Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.8.    Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.9.    Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.10. Bankruptcy Court or Court**: The United States Bankruptcy Court for the District of Hawaii.

**9.11. Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.12. Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.13. Chapter 11 Case**: This case under chapter 11, Subchapter V of the Bankruptcy Code in which PANCAKES OF HAWAII, INC. is the Debtor-in-Possession.

**9.14. Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.15. Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.16. Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.17. Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.18. Confirmation Hearing**: The hearing to be held to consider confirmation of the Plan.

**9.19. Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.20. Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.21. Debtor** and **Debtor-in-Possession**: PANCAKES OF HAWAII, INC., the debtor-in-possession in this Chapter 11 Case.

**9.22. Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.23. Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.24. Effective Date**: The first Business Day (a) on which no stay of the Confirmation Order is in effect and (b) that is at least one Business Day after the

U.S. Bankruptcy Court - Hawaii   #23-00386   Dkt # 64   Filed  08/22/23   Page 25 of 39

date on which Confirmation Order, in form and substance reasonably satisfactory to the Debtor shall become a Final Order.

**9.25. Equity Interest**: An ownership interest in the Debtor.

**9.26. Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.27. Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.28. IRC**: The Internal Revenue Code.

**9.29. Other Priority Claim**: means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim, or an Administrative Expense Claim.

**9.30. Petition Date**: November 30, 2022, the date the Debtor filed its chapter 11 petition.

**9.31. Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32. Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33. Reorganized Debtor**: The Debtor after the Effective Date.

**9.34. Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35. Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36. Trustee**: RICHARD EMERY, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37. Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

U.S. Bankruptcy Court - Hawaii   #23-00386   Dkt # 64   Filed  08/22/23   Page 26 of 39

DATED:  Honolulu, Hawaii, August 22, 2023.

Pancakes of Hawaii, Inc.

_____
Young Acopan, Its President

22

# EXHIBIT 1

# Pancakes Of Hawaii, Inc.
## Projections
### January through December 2024

| | Jan 24 | Feb 24 | Mar 24 | Apr 24 | May 24 | Jun 24 | Jul 24 | Aug 24 | Sep 24 | Oct 24 |
|---|---|---|---|---|---|---|---|---|---|---|
| BEGINNING CASH | $ 500,225.66 | $ 337,371.38 | $ 332,986.62 | $ 313,056.94 | $ 318,148.93 | $ 336,151.27 | $ 318,842.89 | $ 274,812.01 | $ 288,064.72 | $ 252,872.59 |
| **Ordinary Income/Expense** | | | | | | | | | | |
| **Income** | | | | | | | | | | |
| Sales-D | 135,000.00 | 120,000.00 | 150,000.00 | 135,000.00 | 157,000.00 | 155,000.00 | 168,000.00 | 153,000.00 | 140,000.00 | 160,000.00 |
| Sales-K | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Income | 135,000.00 | 120,000.00 | 150,000.00 | 135,000.00 | 157,000.00 | 155,000.00 | 168,000.00 | 153,000.00 | 140,000.00 | 160,000.00 |
| **Cost of Goods Sold** | | | | | | | | | | |
| Food Purchases | 37,800.00 | 33,600.00 | 42,000.00 | 37,800.00 | 43,960.00 | 43,400.00 | 47,040.00 | 45,900.00 | 42,000.00 | 44,800.00 |
| Total COGS | 37,800.00 | 33,600.00 | 42,000.00 | 37,800.00 | 43,960.00 | 43,400.00 | 47,040.00 | 45,900.00 | 42,000.00 | 44,800.00 |
| Gross Profit | 97,200.00 | 86,400.00 | 108,000.00 | 97,200.00 | 113,040.00 | 111,600.00 | 120,960.00 | 107,100.00 | 98,000.00 | 115,200.00 |
| **Expense** | | | | | | | | | | |
| Advertising and Promotion | 0.00 | 0.00 | 205.89 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Auto expenses | 135.45 | 137.95 | 172.31 | 270.50 | 1,401.57 | 233.39 | 158.03 | 150.05 | 156.51 | 153.37 |
| Auto expenses-Lease | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Bank Service Charges** | | | | | | | | | | |
| Merchant Account Fees | 2,565.00 | 2,280.00 | 2,850.00 | 2,565.00 | 2,983.00 | 2,945.00 | 3,192.00 | 2,907.00 | 2,660.00 | 3,040.00 |
| Bank Service Charges - Other | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 |
| Total Bank Service Charges | 2,570.00 | 2,285.00 | 2,855.00 | 2,570.00 | 2,988.00 | 2,950.00 | 3,197.00 | 2,912.00 | 2,665.00 | 3,045.00 |
| Contribution | 0.00 | 0.00 | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Depreciation Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Dues & subscriptions | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 188.48 | 78.91 | 0.00 |
| Employee Benefits | 3,550.00 | 3,550.00 | 3,550.00 | 3,550.00 | 3,550.00 | 3,550.00 | 3,550.00 | 3,550.00 | 3,550.00 | 3,550.00 |
| Geneal excise taxes | 6,075.84 | 5,400.74 | 6,750.93 | 6,075.84 | 7,065.97 | 6,975.96 | 7,561.04 | 6,885.95 | 6,300.87 | 7,200.99 |
| Insurance Expense | 0.00 | 615.03 | 0.00 | 869.12 | 0.00 | 0.00 | 20,064.67 | 0.00 | 5,420.22 | 978.21 |
| Meals and Entertainment | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Medical expenses | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 120.00 | 0.00 |
| Office Supplies | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 |
| Other taxes & License | 0.00 | 0.00 | 0.00 | 0.00 | 400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Wages | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 |
| Total Payroll Expenses | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 | 54,200.00 |
| Penalties | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1.21 | 0.00 | 0.00 | 0.00 |
| Bookkeeper/Accountant Fees | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 |
| **Rent Expense** | | | | | | | | | | |
| Rent-D | 13,692.96 | 13,692.96 | 13,692.96 | 13,692.96 | 13,692.96 | 14,400.00 | 14,400.00 | 14,400.00 | 14,400.00 | 14,400.00 |
| Rent-K | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Rent Expense | 13,692.96 | 13,692.96 | 13,692.96 | 13,692.96 | 13,692.96 | 14,400.00 | 14,400.00 | 14,400.00 | 14,400.00 | 14,400.00 |
| Repairs and Maintenance | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| Royalty-frenchise fee | 2,700.00 | 2,400.00 | 3,000.00 | 2,700.00 | 3,140.00 | 3,100.00 | 3,360.00 | 3,060.00 | 2,800.00 | 3,200.00 |
| Supplies | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 |
| Telephone/internet Expense | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Utilities | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 |
| Total Expense | 91,429.25 | 90,786.68 | 92,932.09 | 92,433.42 | 95,043.50 | 93,914.35 | 114,996.95 | 93,851.48 | 98,196.51 | 95,232.57 |
| Net Ordinary Income | 5,770.75 | -4,386.68 | 15,067.91 | 4,766.58 | 17,996.50 | 17,685.65 | 5,963.05 | 13,248.52 | -196.51 | 19,967.43 |
| **Other Income/Expense** | | | | | | | | | | |
| **Other Income** | | | | | | | | | | |
| Interest Income | 1.97 | 1.92 | 2.41 | 325.41 | 5.84 | 5.97 | 6.08 | 4.18 | 4.38 | 4.96 |
| Income Tax | 0.00 | 0.00 | -35,000.00 | 0.00 | 0.00 | -35,000.00 | 0.00 | 0.00 | -35,000.00 | 0.00 |
| Professionals Fees | -85,500.00 * | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -50,000.00 | 0.00 | 0.00 | 0.00 |
| Plan Payment | -83,127.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Other Income | -168,625.03 | 1.92 | -34,997.59 | 325.41 | 5.84 | -34,994.03 | -49,993.92 | 4.18 | -34,995.62 | 4.96 |
| Net Other Income | -168,625.03 | 1.92 | -34,997.59 | 325.41 | 5.84 | -34,994.03 | -49,993.92 | 4.18 | -34,995.62 | 4.96 |
| Net Income | -162,854.28 | -4,384.76 | -19,929.68 | 5,091.99 | 18,002.34 | -17,308.38 | -44,030.87 | 13,252.70 | -35,192.13 | 19,972.39 |
| ENDING CASH | $ 337,371.38 | $ 332,986.62 | $ 313,056.94 | $ 318,148.93 | $ 336,151.27 | $ 318,842.89 | $ 274,812.01 | $ 288,064.72 | $ 252,872.59 | $ 272,844.98 |

*Includes estimated $10,500 for Subchapter V truste

U.S. Bankruptcy Court - Hawaii   #23-00386   Dkt # 64   Filed  08/22/23   Page 29 of 39

**Pancakes Of Hawaii, Inc.**
**Projections**
January through December 2024

|  | Nov 24 | Dec 24 | TOTAL |
|---|---|---|---|
| **BEGINNING CASH** | $ 272,844.98 | $ 284,176.92 | |
| Ordinary Income/Expense | | | |
| Income | | | |
| Sales-D | 145,000.00 | 167,000.00 | 1,785,000.00 |
| Sales-K | 0.00 | 0.00 | 0.00 |
| **Total Income** | 145,000.00 | 167,000.00 | 1,785,000.00 |
| Cost of Goods Sold | | | |
| Food Purchases | 40,600.00 | 46,760.00 | 505,660.00 |
| **Total COGS** | 40,600.00 | 46,760.00 | 505,660.00 |
| **Gross Profit** | 104,400.00 | 120,240.00 | 1,279,340.00 |
| Expense | | | |
| Advertising and Promotion | 0.00 | 0.00 | 205.89 |
| Auto expenses | 153.37 | 153.37 | 3,275.87 |
| Auto expenses-Lease | 0.00 | 0.00 | 0.00 |
| Bank Service Charges | | | |
| Merchant Account Fees | 2,755.00 | 3,173.00 | 33,915.00 |
| Bank Service Charges - Other | 5.00 | 5.00 | 60.00 |
| **Total Bank Service Charges** | 2,760.00 | 3,178.00 | 33,975.00 |
| Contribution | 0.00 | 0.00 | 100.00 |
| Depreciation Expense | 0.00 | 5,721.92 | 5,721.92 |
| Dues & subscriptions | 78.91 | 0.00 | 346.30 |
| Employee Benefits | 3,550.00 | 3,550.00 | 42,600.00 |
| Geneal excise taxes | 6,525.90 | 7,516.04 | 80,336.07 |
| Insurance Expense | 0.00 | 0.00 | 27,947.25 |
| Meals and Entertainment | 50.00 | 400.00 | 950.00 |
| Medical expenses | 0.00 | 0.00 | 120.00 |
| Office Supplies | 125.00 | 125.00 | 1,500.00 |
| Other taxes & License | 0.00 | 0.00 | 400.00 |
| **Total Wages** | 54,200.00 | 54,200.00 | 650,400.00 |
| **Total Payroll Expenses** | 54,200.00 | 54,200.00 | 650,400.00 |
| Penalties | 0.00 | 0.00 | 1.21 |
| Bookkeeper/Accountant Fees | 1,050.00 | 1,050.00 | 12,600.00 |
| Rent Expense | | | |
| Rent-D | 14,400.00 | 14,400.00 | 169,264.80 |
| Rent-K | 0.00 | 0.00 | 0.00 |
| **Total Rent Expense** | 14,400.00 | 14,400.00 | 169,264.80 |
| Repairs and Maintenance | 1,500.00 | 1,500.00 | 18,000.00 |
| Royalty-frenchise fee | 2,900.00 | 3,340.00 | 35,700.00 |
| Supplies | 1,300.00 | 1,300.00 | 15,600.00 |
| Telephone/internet Expense | 180.00 | 180.00 | 2,160.00 |
| Utilities | 4,300.00 | 4,300.00 | 51,600.00 |
| **Total Expense** | 93,073.18 | 100,914.33 | 1,152,804.31 |
| **Net Ordinary Income** | 11,326.82 | 19,325.67 | 126,535.69 |
| Other Income/Expense | | | |
| Other Income | | | |
| Interest Income | 5.12 | 5.63 | 373.87 |
| Income Tax | 0.00 | -35,000.00 | -140,000.00 |
| Professionals Fees | 0.00 | 0.00 | -135,500.00 |
| Plan Payment | 0.00 | -167,972.37 | -251,099.37 |
| **Total Other Income** | 5.12 | -202,966.74 | -526,225.50 |
| **Net Other Income** | 5.12 | -202,966.74 | -526,225.50 |
| **Net Income** | 11,331.94 | -183,641.07 | -399,689.81 |
| **ENDING CASH** | $ 284,176.92 | $ 100,535.85 | |

U.S. Bankruptcy Court - Hawaii   #23-00386   Dkt # 64   Filed  08/22/23   Page 30 of 39

# EXHIBIT 2

# Pancakes Of Hawaii, Inc.
## Statement of Assets, Liabilities and Equity-Income tax basis
### As of March 31, 2023

|  | Mar 31, 23 |
|---|---:|
| **ASSETS** | |
| Current Assets | |
| Checking/Savings | |
| American Savings Bank | 328,941.90 |
| American Savings Bank-Saving | 8,465.61 |
| Cash on Hand | 23,140.30 |
| Total Checking/Savings | 360,547.81 |
| Other Current Assets | |
| Inventory | 13,000.00 |
| Prepaid taxes | 181.03 |
| Total Other Current Assets | 13,181.03 |
| Total Current Assets | 373,728.84 |
| Fixed Assets | |
| Equipment | |
| Accum. depr-equip't | (25,112.65) |
| Equipment - Other | 26,040.11 |
| Total Equipment | 927.46 |
| Furniture & Fixture | |
| Accum. depr-F & F | (202,275.77) |
| Furniture & Fixture - Other | 202,275.77 |
| Total Furniture & Fixture | 0.00 |
| Kitchen Equipment | |
| Accum. depr-Kitchen | (110,944.48) |
| Kitchen Equipment - Other | 110,944.48 |
| Total Kitchen Equipment | 0.00 |
| Lease Improvement | |
| Accum. depr-LI | (55,545.47) |
| Lease Improvement - Other | 199,009.56 |
| Total Lease Improvement | 143,464.09 |
| Utensil | |
| Accum. depr-Utensil | (34,092.93) |
| Utensil - Other | 34,092.93 |
| Total Utensil | 0.00 |
| Total Fixed Assets | 144,391.55 |
| Other Assets | |
| Intangible Assets | |
| Accum. amort | (90,152.38) |
| Intangible Assets - Other | 90,152.38 |
| Total Intangible Assets | 0.00 |
| Security Deposits Asset | 17,368.20 |
| Total Other Assets | 17,368.20 |
| **TOTAL ASSETS** | 535,488.59 |
| **LIABILITIES & EQUITY** | |
| Liabilities | |

Unaudited- No assurance is provided.

# Pancakes Of Hawaii, Inc.
## Statement of Assets, Liabilities and Equity-Income tax basis
### As of March 31, 2023

|  | Mar 31, 23 |
|---|---:|
| **Current Liabilities** | |
| Credit Cards | |
| Citi payable | 73,817.24 |
| | |
| Total Credit Cards | 73,817.24 |
| | |
| Other Current Liabilities | |
| General excise taxes payable | 8,414.14 |
| Payroll Liabilities | |
| FUTA payable | 185.79 |
| SUI payable | 303.88 |
| | |
| Total Payroll Liabilities | 489.67 |
| | |
| Wage payable | 697.75 |
| Withholding-Other | 667.74 |
| | |
| Total Other Current Liabilities | 10,269.30 |
| | |
| Total Current Liabilities | 84,086.54 |
| | |
| Total Liabilities | 84,086.54 |
| | |
| Equity | |
| Capital Stock | 13,500.00 |
| Paid-in Capital | 30,500.00 |
| R/E-C corp | (47,609.18) |
| Retained Earnings | 1,009,632.44 |
| Shareholder Distributions | |
| S/H-IRS | (135,000.00) |
| S/H-ST | (75,000.00) |
| Shareholder Distributions - Other | (410,334.02) |
| | |
| Total Shareholder Distributions | (620,334.02) |
| | |
| Net Income | 65,712.81 |
| | |
| Total Equity | 451,402.05 |
| | |
| TOTAL LIABILITIES & EQUITY | 535,488.59 |

Unaudited- No assurance is provided.

# Pancakes Of Hawaii, Inc.
## Statement of Revenues and Expenses-Income tax basis
For one month and three months ended March 31, 2023

| | Mar 23 | Jan - Mar 23 | % of Income |
|---|---|---|---|
| **Ordinary Income/Expense** | | | |
| **Income** | | | |
| Sales-D | | | |
| Sales-Tips D | 140,933.00 | 368,096.00 | 92.2% |
| Sales-D - Other | 11,896.15 | 29,216.66 | 7.8% |
| Total Sales-D | 152,829.15 | 397,312.66 | 100.0% |
| Sales-K | | | |
| Sales-Tips K | 0.00 | 143,686.00 | 0.0% |
| Sales-K - Other | 0.00 | 1,972.36 | 0.0% |
| Total Sales-K | 0.00 | 145,658.36 | 0.0% |
| Total Income | 152,829.15 | 542,971.02 | 100.0% |
| Cost of Goods Sold | | | |
| Food Purchases | 39,287.70 | 131,297.14 | 25.7% |
| Total COGS | 39,287.70 | 131,297.14 | 25.7% |
| Gross Profit | 113,541.45 | 411,673.88 | 74.3% |
| Expense | | | |
| Auto expenses | 551.38 | 1,399.80 | 0.4% |
| Auto expenses-Lease | 0.00 | 1,390.23 | 0.0% |
| Bank Service Charges | | | |
| Merchant Account Fees | 3,477.77 | 12,268.47 | 2.3% |
| Total Bank Service Charges | 3,477.77 | 12,268.47 | 2.3% |
| Dues & subscriptions | 86.15 | 245.97 | 0.1% |
| Employee Benefits | 4,224.54 | 19,026.68 | 2.8% |
| Geneal excise taxes | 7,945.74 | 28,442.97 | 5.2% |
| Insurance Expense | (143.52) | 648.03 | (0.1)% |
| Meals and Entertainment | 0.00 | 60.00 | 0.0% |
| Office Supplies | 193.44 | 660.64 | 0.1% |
| Other taxes & License | 0.00 | 800.00 | 0.0% |
| Payroll Expenses | | | |
| FICA | 6,597.24 | 17,465.28 | 4.3% |
| SUI | 0.00 | 896.73 | 0.0% |
| Wages | 55,295.89 | 151,444.85 | 36.2% |
| Total Payroll Expenses | 61,893.13 | 169,806.86 | 40.5% |
| Professional Fees | 1,047.12 | 4,141.36 | 0.7% |
| Rent Expense | | | |
| Rent-D | 13,692.96 | 41,078.88 | 9.0% |
| Rent-K | 0.00 | 24,988.08 | 0.0% |
| Total Rent Expense | 13,692.96 | 66,066.96 | 9.0% |
| Repairs and Maintenance | 811.35 | 5,691.57 | 0.5% |
| Royalty-frenchise fee | 3,372.51 | 13,128.20 | 2.2% |
| Supplies | 1,074.71 | 3,861.70 | 0.7% |
| Telephone/internet  Expense | 270.60 | 861.17 | 0.2% |
| Utilities | 6,494.37 | 17,471.14 | 4.2% |
| Total Expense | 104,992.25 | 345,971.75 | 68.7% |
| Net Ordinary Income | 8,549.20 | 65,702.13 | 5.6% |
| Other Income/Expense | | | |
| Other Income | | | |

Unaudited- No assurance is provided.

# Pancakes Of Hawaii, Inc.
## Statement of Revenues and Expenses-Income tax basis
For one month and three months ended March 31, 2023

|                    | Mar 23   | Jan - Mar 23 | % of Income |
|--------------------|----------|--------------|-------------|
| Interest Income    | 0.14     | 10.68        | 0.0%        |
| Total Other Income | 0.14     | 10.68        | 0.0%        |
| Net Other Income   | 0.14     | 10.68        | 0.0%        |
| Net Income         | 8,549.34 | 65,712.81    | 5.6%        |

Unaudited- No assurance is provided.

**EXHIBIT 3**
**Summary of Debtor's Perioding Operating Reports**

| Month | Receipts | Distributions |
|---|---|---|
| May 22-31, 2023 | $39,261.76 | $45,894.41 |
| June 2023 | $147,496.80 | $56,195.42 |

**EXHIBIT 4**

**Executory Contracts to be Assumed**

| | Description | Cure Amount |
|---|---|---|
| 1 | Lease between Waikamilo Shopping Center(as landlord) and Debtor (as tenant) for 2,616 sf of space located at 1414 Dillingham Blvd., Suite #107-8, Honolulu, Hawaii | $0 |
| 2 | Franchise Agreement with The Original Pancake House Franchising Inc. | $0 |

# EXHIBIT 5

| ASSETS: | | LOW | HIGH |
|---|---|---|---|
| Cash-In-Bank* | | $ 500,255.66 | $ 500,255.66 |
| Estimated Value of Remaining Assets to Be Liquidated | | | |
| | Personal Property** | $ 4,500.00 | $ 8,000.00 |
| | Food Inventory | $ 1,000.00 | $ 3,000.00 |
| | Claim against FPA Kapiolani | $ - | $ 120,000.00 |
| | Lease and Franchise | $ - | $ - |
| Total Assets: | | $ 505,755.66 | $ 631,255.66 |
| | | | |
| LIABILITIES: | | Low | High |
| Administrative Claims | | | |
| | A/P | $ 30,000.00 | $ 40,000.00 |
| | Professionals | $ 150,000.00 | $ 220,000.00 |
| | Ch. 7 Trustee fee | $ 28,537.78 | $ 34,812.78 |
| | Ch. 7 Trustee's professionals | $ 75,000.00 | $ 100,000.00 |
| Estimated Priority Claims | | $ 2,600.00 | $ 2,600.00 |
| **Total Liabilities Ahead of Unsecured Claims** | | $ 286,137.78 | $ 397,412.78 |
| **Total available for unsecured** | | $ 219,617.88 | $ 233,842.88 |
| Estimated Unsecured Claims*** | | $ 345,919.00 | $ 520,919.00 |

| Percentage of Claims Which Unsecured Creditors Will Receive or Retain in a Chapter 7 Liquidation | 63% | 45% |
|---|---|---|

\*Estimated Cash in Bank as of 1/1/2024
\*\* Net of $2,000 in anticipated expenses for removal
\*\*\* "Low" value includes $170,919 in general unsecured claims and 50% of FPA Kapiolani claim
         "High" value includes $170,919 in general unsecured claims plus
         100% of FPA Kapiolani claim

81311